José V. Usera, peticionario y apelante, *v.* Jorge Bird Arias, Eladio J. Candal y Fajardo Sugar Co. of P. R., demandados y apelados.

No. 4919.—*Sometido:* Enero 15, 1930. *Resuelto:* Julio 31, 1931.

*H. G. Molina* y *M. León Parra,* abogados del apelante; *Arturo Aponte,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

José V. Usera acudió a la corte de distrito en solicitud de un auto de *mandamus* para hacer valer su alegado derecho como accionista, a tenor de los artículos 12 y 20 de la Ley de Corporaciones (Estatutos Revisados, secciones 418 y 426), de examinar el libro de acciones y el registro de transferencias de la Fajardo Sugar Company. Después de celebrar una vista en que se practicó prueba por ambas partes, la corte de distrito anuló un auto alternativo previamente expedido y desestimó la acción.

El artículo 12 exige que los libros de acciones y los registros de transferencias de las corporaciones organizadas

bajo la ley local sean mantenidos .en una oficina principal
en la Isla de Puerto Rico "para la inspección de todos los
que tuvieren derecho a verlos y para la transferencia de ac-
ciones.''

El artículo 20 lee en parte como sigue:

"Toda corporación organizada bajo esta ley, llevará en su oficina
principal en la Isla de Puerto Rico, registros de traspasos en que se
asentarán las transferencias de acciones, y registros de acciones que
contendrán los nombres y direcciones de los accionistas y número de
acciones que poseen, los cuales registros podrán en todo tiempo, du-
rante las horas ordinarias de oficina, ser examinados por cualquier
accionista.''

Por tanto, todo accionista *bona fide* tiene un derecho
*prima facie* a examinar el libro de acciones y el registro de
transferencias. Según el peso de las autoridades en los Es-
tados Unidos, una petición de *mandamus* para hacer valer el
pretendido derecho puede denegarse en un caso adecuado,
previa la aportación de prueba satisfactoria por el deman-
dado, y en el ejercicio de una saña discreción por el juzga-
dor. 38 C. J. 796, sección 453; nota al calce de *Otis Hidden
Co.* v. *Scheirich*, 22 A.L.R. 19, 24.

Debe, sin embargo, haber tal prueba satisfactoria.

■ Hubo evidencia tendente a demostrar que algunos
meses antes de incoarse el .presente recurso, una entidad
rival había invadido territorio de que previamente estaba
apoderada la Fajardo Sugar Company en virtud de contra-
tos de arrendamiento y de molienda de caña con los colonos.
En razón de esos contratos, la arrendataria satisfacía un
canon de diez a doce dólares por cuerda. Con el pago de
veinte dólares o más por cuerda por los mismos terrenos, la
aludida competidora, para la época, del juicio se había
anexado unas tres mil cuerdas de terreno, tributarias ante-
.riormente de la central de la Fajardo Sugar Company.

Farr & Company—corredores en azúcar y en acciones,
miembros de ciertos sindicatos para la promoción y desarro-
llo de determinados proyectos, y para la expedición, venta

y tráfico de valores en relación con los mismos—eran los agentes en Nueva York de la corporación competidora. Usera era uno de los miembros de la firma de Farr & Company, en lo atinente a ciertos intereses en **Puerto Rico.**

Para la época en que la Fajardo Sugar Company empezó a perder sus arrendamientos, Farr & Company obtuvo diez acciones de la primera y solicitó una lista de accionistas contentiva de los nombres, direcciones y número de acciones poseídas por cada accionista, y luego exigió por escrito la oportunidad de examinar el libro de acciones en las oficinas de la corporación en Nueva York. Al tiempo de hacerse la primera solicitud, se le preguntó al Sr. Jack Farr, socio de la firma, si necesitaba tal lista "para fines de negocio o con algún otro propósito, a fin de satisfacer ciertas necesidades particulares de la firma Farr & Company, con el propósito de aconsejar a sus parroquianos o al público en general si debían comprar o vender acciones de la Fajardo Sugar Company o negociar las que la firma poseía y estaba particularmente interesada en vender." Él replicó que ése era el único objeto de su petición; o, en otras palabras, que necesitaba la lista "para fines de negocio." Entonces se le ofreció una lista conteniendo los nombres de los accionistas y sus direcciones. Durante los años anteriores, Farr & Company se había conformado con esa lista. En esta ocasión, el Sr. Farr dijo que él creía que como accionista de la Fajardo Sugar Company of Porto Rico tenía derecho a obtener una lista demostrativa del número de acciones poseídas por cada accionista. Entonces se le recordó que en el pasado se había sentido satisfecho con una lista conteniendo solamente los nombres y direcciones de los accionistas, y que desde entonces no había habido cambio alguno en la forma de los negocios de él, salvo que en el ínterin se había "relacionado con el Sr. Walker en Puerto Rico, quien sostenía muy estrechos vínculos de negocios con la United Porto Rico Sugar Company, de la cual es presidente el Sr. Walker."

En respuesta a esto, el Sr. Farr amenazó con entablar una acción judicial.

Poco después, las diez acciones fueron traspasadas al Sr. Usera, quien instó procedimientos en Puerto Rico. La historia de los primeros dos de esos procedimientos puede hallarse en *Usera* v. *Bird Arias,* 40 D.P.R. 28, 33, y *Arias* v. *Usera,* 38 Fed. (2d) 235.

En una deposición, el Sr. Jorge Bird Arias, vicepresidente y administrador general de la Fajardo Sugar Company, dijo que el propósito de Usera era obtener una lista completa de los accionistas con el número de acciones poseídas por cada uno, a fin de entregarla a Farr & Co., y que esta aseveración se basaba no sólo en una carta recibida por Bird del presidente de la compañía, sino también en la declaración de Usera a ese efecto mientras ocupaba la silla testifical.

Si uno escrudiña la lista de casos revisados en la nota monográfica que aparece en *Ottis-Hidden Co.* v. *Scheirich, supra,* no creo que encontrará un caso en que se negase un *mandamus* a virtud de la clase de prueba que hay en estos autos. En *Guthrie* v. *Harkness,* 199 U. S. 156, la corte dijo:

"No debe expedirse el auto para fines especulativos o para satisfacer una vana curiosidad, o para ayudar a un chantajista, pero no se le debe negar a un accionista que interesa la información para fines legítimos. Re Steinway, 159 N. Y. 250, 45 L.R.A. 461, 53 N.E. 1103, Thomp. Corp. 4412."

Usera negó que él deseara ver los libros para fines especulativos. La frase "fines especulativos," según la entendemos, significa algo distinto de los hechos revelados. No incluye las tentativas de una entidad comercial para obtener, ya las tierras arrendadas, o las acciones, de una empresa rival. Tales tentativas, u otras similares, pueden parecer hostiles a las personas bajo cuyo control se halla una corporación, pero a nosotros nos parecen como competencia legítima.

De todos modos, para que se pueda objetar una solicitud

de *mandamus,* debe hacerse ante la corte una demostración que equivalga a una imputación de fraude o conspiración. El peso de probar un designio indebido, fraudulento o ilegal cae sobre el demandado, y eso no ha logrado hacerlo la corporación ante nos.

El juez que suscribe está autorizado para decir que el Juez Asociado Sr. Texidor está conforme con el resultado en este caso, y que el Juez Presidente Sr. del Toro disiente.

*Debe revocarse la sentencia apelada y dictarse otra ordenando a los demandados que pongan a disposición del demandante los libros originales de acciones y transferencias, a fin de que puedan ser examinados por él durante horas de oficina en días laborables, y para otros fines no inconsistentes con esta opinión.*

El Juez Asociado Señor Hutchison disintió.*